46 N.J. Super. 405 (1957)
134 A.2d 779
PADDOCK BAR, INC., DEFENDANT-APPELLANT,
v.
DIVISION OF ALCOHOLIC BEVERAGE CONTROL, PLAINTIFF-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1957.
Decided September 25, 1957.
*406 Before Judges CLAPP, JAYNE and HUGHES.
Mr. Donald J. Cunningham argued the cause for appellant.
Mr. Samuel B. Helfand, Deputy Attorney-General, argued the cause for respondent (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey).
*407 The opinion of the court was delivered by JAYNE, J.A.D.
A disciplinary proceeding was instituted on May 4, 1956 by the Director of the Division of Alcoholic Beverage Control against the Paddock Bar, Inc., a corporate holder of a plenary retail consumption license to vend beverages at its premises designated as Nos. 810-812 Cookman Avenue, in the City of Asbury Park.
The alleged infraction to which the licensee was summoned to respond reads as follows:
"On April 6, 7, 8, 21 and 22, 1956, you allowed, permitted and suffered your licensed place of business to be conducted in such manner as to become a nuisance in that you allowed, permitted and suffered female impersonators and persons who appeared to be homosexuals in and upon your licensed premises; allowed, permitted and suffered such persons to frequent and congregate in large numbers in and upon your licensed premises; and otherwise conducted your place of business in a manner offensive to common decency and public morals; in violation of Rule 5 of State Regulations No. 20."
A hearing involving the accusation was conducted, at which witnesses were sworn and interrogated. Upon consideration of the evidence, the Director concluded that the violation of the stated regulatory rule had been established, and he ordered that the appellant's license be suspended for a period of 60 days, commencing at 7:00 A.M. on March 4, 1957. Although the Director's order was fully obeyed, the licensee doubted its validity, hence the prosecution of this appeal.
The essence of the inquiry addressed to us by the appellant is whether the promulgated regulatory rule specified in the charge encompassed the factual circumstances disclosed by the evidence adduced at the hearing in the present proceedings.
We have heretofore expressed the observation that the liquor business must in the interest of the public welfare be carefully supervised and tightly restrained, and to that end, the governmental power extensively to regulate licensees should be accorded broad judicial support. Such was also *408 the manifest design of the Alcoholic Beverage Control statute. Vide, In re Schneider, 12 N.J. Super. 449 (App. Div. 1951).
In our above-cited decision we stated:
"The object manifestly inherent in the rule with which we are here concerned [likewise Rule 5] is primarily to discourage and prevent not only lewdness, fornication, prostitution, but all forms of licentious practices and immoral indecency on the licensed premises. The primary intent of the regulation is to suppress the inception of any immoral activity, not to withhold disciplinary action until the actual consummation of the apprehended evil."
True, in the present proceeding the evidence was not of the probative quality to establish beyond uncertainty that the specified patrons of the tavern were in actuality homosexuals. Neither was there any proof that any of such individuals indulged in any licentious solicitations on the premises. Moreover, it is not to be supposed that a licensee is to be disciplined by a temporary or permanent forfeiture of his business privilege merely upon proof of a sale or occasional sales to one who happened to be an adult vagabond, ex-convict, sexual deviate, or prostitute.
Here, a distinguishable understanding of the accusation is imperative. The appellant was charged with the misconduct of permitting persons who conspicuously displayed by speech, tone of voice, bodily movements, gestures, and other mannerisms the common characteristics of homosexuals habitually and in inordinate numbers (on one occasion, as many as 45) to congregate at the tavern, which, incidentally, was advertised to be "The Gayest Spot in Town."
Assuredly, it is inimical to the preservation of our social and moral welfare to permit public taverns to be converted into recreational fraternity houses for homosexuals or prostitutes. It is the policy and practice of the Division of Alcoholic Beverage Control to nip reasonably apprehended evils while they are in the bud.
If the evidence here failed adequately to prove that the described patrons were in fact homosexuals, it certainly proved that they had the conspicuous guise, demeanor, carriage, and appearance of such personalities. It is often *409 in the plumage that we identify the bird. The psychiatrist constructs his deductive conclusions largely upon the ostensible personality behavior and unnatural mannerisms of the patient.
It cannot be logically determined that in the present proceeding there was no circumstantial or inferential evidence productive of the impression, perhaps general, that the patrons under observation were not so-called female impersonators. Logical inferences are more than mere suspicions.
A detailed recitation of the informational testimony submitted to the Director need not be undertaken. Illustrative in part is the evidence that these congregated males in a noticeably effeminate pitch of voice addressed each other affectionately as "dearie, honey, doll, and darling." One was overheard to remark, "Well, I think I will wait for my husband." One of the inquisitive investigating agents inquired of the bartender as he ordered a drink, "What are all these guys in here, queers?" The bartender surveyed the customers and replied, "Most of them are." They are said to have manipulated their cigarettes, giggled, and rocked and swayed their posteriors in a maidenly fashion.
The Director resolved that the acquiescence of the licensee in the customary assemblage in relatively large numbers of such individuals at the tavern offended the intent and purpose of Rule 5 of the State Regulations No. 20. See, Re Roselle, Bulletin 279, Item 8.
We do not think that his disciplinary action was arbitrary or without factual basis or legal authority. The order is affirmed.